## In re CHRYSLER MOTORS CORP. OVERNIGHT EVALUATION PROGRAM LITIGATION TAG–ALONG CASES.

MDL No. 740A.

United States District Court, E.D. Missouri.

July 25, 1991.

---

See also 736 F.Supp. 1007.

Lead Counsel: Charles M. Thompson, Thompson & Griffis, Birmingham, Ala., Charles A. Newman, Thompson & Mitchell, St. Louis, Mo., William T. McLellan, Chrysler Corp., Highland Park, Mich.

Other Counsel: Theodore R. Opperwall, Dickenson Wright Moon VanDusen & Freeman, Detroit, Mich., Dean A. Brown, Fort Wayne, Ind., Rodger N. Bowman, Clarksville, Tenn., Randolph A. Veazey, Glasgow & Veazey, Nashville, Tenn., H. Sol Clark, Clark & Clark, Savannah, Ga.

## MEMORANDUM AND ORDER

NANGLE, District Judge.

On May 7, 1991, the Court issued a memorandum and order [A(902)] setting forth the procedure by which lead and former liaison counsel are to be compensated for their time and reimbursed for the costs they have incurred in these tag-along actions. In response thereto, lead and former liaison counsel have submitted statements of expenses [A(910) and A(909) respectively]. Lead counsel [in A(912), A(912a), A(929), A(930)], former liaison counsel [in A(919)], Chrysler Motors Corporation [in A(923))], tag-along plaintiffs Randy and Karen Warner [in A(918)], and tag-along plaintiffs Paul and Jane Monier [in A(922)] have submitted various memoranda concerning issues raised by the May 7 order as to which they object or desire clarification. The Court will first address the issues raised in these memoranda and then turn to the calculation and apportionment of lead and former liaison counsel's expenses.

### I. Counsel Fees Issues Raised in the Parties' Memoranda

■ 1. *Confidential Settlements in Hume and Monier.* Lead counsel is concerned about recouping his 30% contingency fee [1] in the *Hume* and *Monier* cases, in which settlement was reached without the involvement of lead counsel and subject to certain confidentiality agreements. Nei-

---

1. Throughout this memorandum, the Court speaks loosely of lead counsel's "30% contingency fee" and former liaison counsel's "10% contingency fee" with no intention of undermining the provision of the May 7 order that both lead and former liaison counsel's fees are to be calculated as a percentage of the amount by which each plaintiff's recovery *exceeds $500.*

ther the *Hume* nor *Monier* plaintiffs have filed any response to lead counsel's concern; Chrysler has indicated that it foresees no problem with disclosing to lead and former liaison counsel the settlement amounts in these cases, so long as counsel's use of that information is subject to appropriate confidentiality restraints. Lead counsel has further responded that he has no objection to being bound by the confidentiality of the settlement agreements.

Accordingly, the Court orders the parties to the *Hume* and *Monier* settlements to jointly prepare an appropriate protective order governing the disclosure of the settlement amounts to lead and former liaison counsel. The draft order shall be submitted to the Court for its signature within ten days of the date of this order. Thereafter, the parties to the *Hume* and *Monier* settlements shall jointly draw up appropriate sworn statements as to the amount of settlement in each case. Within five days of the issuance of the protective order, the statement for each case must be signed by all parties to the settlement in question, filed with the Court under seal, and served on lead and former liaison counsel only. Simultaneous with the filing and service of the sworn statement, the *Hume* and *Monier* plaintiffs must pay lead and former liaison counsel the fees to which they are entitled under the May 7 order, and file with the Court a notice indicating that they have done so.

■ 2. *Enforcement of Fee Awards.*
Lead counsel has expressed concern about his ability to enforce the fee award granted by the Court, particularly in those cases in which plaintiffs have already received from Chrysler the settlements upon which they have agreed. Lead counsel further suggests that the Court should punish Chrysler's complicity in negotiating settlements without lead counsel's knowledge and participation, in violation of the Court's March 8, 1989 order [A(28)], by ordering Chrysler to pay lead counsel's fee in those cases. As is to be expected, Chrysler vigorously opposes any such sanction, arguing that the settlement agreements reached in such cases leave responsibility for counsel's fees with the settling plaintiffs.

Although lead counsel intimates that numerous plaintiffs have informed him that Chrysler contacted them directly in an attempt to circumvent lead counsel's involvement in settlement negotiations, and although the Court does possess authority to sanction violations of its orders, the Court does not have before it a motion for sanctions and refuses in the instant context to take on the task of finding the facts necessary to the resolution of any such motion.

Though not specific with respect to parties and dollar amounts, the Court's May 7 order "ordered, adjudged and decreed" lead and former liaison counsel's entitlement to fees as there described. The Court now specifically orders that, in all tag-along cases that have settled since the April 5, 1989 deadline, other than the *Hume* and *Monier* cases addressed above, fees in the amount prescribed by the May 7 order are to be paid to lead and former liaison counsel, by the party responsible for the payment of counsel fees under the terms of the settlement agreement, within ten days of the date of liaison counsel's service of this order. Within twenty days of liaison counsel's service of this order, lead and former liaison counsel shall file status reports indicating in which cases they have received payment of fees as ordered, and, where fees have not been paid as ordered, indicating who owes them and in what amount. Any party failing to pay fees as ordered will be subject to sanctions.

The Court now also specifically orders that, in all tag-along cases yet pending, fees in the amount prescribed by the May 7 order are to be paid to lead and former liaison counsel within twenty-one days of dismissal due to settlement or the entry of final judgment, to be paid by the party responsible for the payment of counsel fees under the terms of the settlement or of the judgment. So that lead and liaison counsel are informed of the ultimate termination of each tag-along case, even after remand by this Court, the Court orders the parties to notify lead and former liaison counsel within three days of the termination of a tag-

along action, whether by settlement or judgment; in the case of settlement, this notice shall include a sworn statement setting forth the settlement amount and signed by all parties to the settlement. Failure to timely pay fees as required by the instant and May 7 orders can be raised by lead or former liaison counsel in the transferor court, which can take the steps it deems appropriate and necessary to redress the violation of this Court's orders.

3. *Potential Future Expenses of Lead Counsel.* The order entered herewith taxes Charles Thompson's expenses incurred as lead counsel through April 1991, his expenses incurred as liaison counsel through May 1991, and all of David Purcell's expenses incurred as former liaison counsel. As the Court nears the issuance of its suggestion of remand, which will initiate the process of remanding the remaining tag-alongs to their transferor courts, the Court will issue an order calling for lead counsel's final statement of expenses. The Court will then issue an appropriate order taxing those final expenses proportionately among the remaining tag-along plaintiffs.

4. *Requests for Documents, etc. from Lead Counsel After Remand.* Lead counsel asks the Court to order that plaintiffs must pay for any copies of documents or videotapes they seek from lead counsel after remand. After remand of these actions, lead counsel will have been discharged by the Court from his appointed position. The Court expects that lead counsel will remain cooperative with plaintiffs' counsel and be willing to provide them with copies of discovery items he has accumulated in his role as lead counsel. The Court agrees that, because Charles Thompson will no longer be acting as lead counsel and his expenses will not then be subject to apportionment by Court order among the various plaintiffs, that he may require that the expenses of copying and mailing items should be borne by the party requesting the copies. The Court therefore orders that, after remand, Charles Thompson may charge for copying and mailing of items requested by tag-along parties or their counsel, at rates not to exceed 5 cents per page for photocopying (see the discussion of photocopying costs in Part II below) and actual cost for duplication of videotapes, plus actual cost of mailing.

5. *Proving Up of Actual Fees at Hourly Rates in Certain Cases.* Lead counsel has inquired whether he might be allowed to prove and receive his actual fee based on hourly rates, rather than receive a 30% contingency, in cases in which no punitive damages are available or in which pursuant to statute a reasonable attorney's fee is part of a successful plaintiff's judgment. Former liaison counsel has registered his opposition to having any portion of his fees determined in this manner, on the ground that assessment of fees by this Court is more appropriate, given that counsel were appointed by and performed their duties before this Court, and also more economical than proving up fees in a variety of trial forums after remand.

Chrysler likewise opposes the idea, based in part on its inefficiency and the risk of disparate approaches to and results concerning lead counsel's fees. Chrysler also argues that the request is in direct conflict with the Court's carefully reasoned conclusion that lead counsel be compensated on a contingency basis. In response to the variety of objections, lead counsel has indicated that he did not strongly urge the possibility on his behalf, but only because some other plaintiffs' attorneys had raised the idea; lead counsel emphasizes that he personally does not object to being compensated on the 30% contingency basis set by the Court.

For all the reasons given by former liaison counsel and Chrysler, as paraphrased above, the Court declines to amend its earlier order to allow lead counsel to seek compensation on an hourly basis in some types of cases. If in some cases punitive damages are unavailable to a successful plaintiff and lead counsel's contingency fees prove small, the Court is not persuaded that the overall scheme set forth in the May 7 order is inequitable. In instances where the tag-along plaintiff is successful and is entitled to attorney's fees as part of his judgment, lead counsel's 30% contin-

gency is to be calculated on the amount by which the sum of any nominal, actual and punitive damages exceeds $500, and paid by the responsible defendant in addition to the amount for which that defendant is liable under the judgment.

Furthermore, the contingency rates set by the Court are compensation for lead and former liaison counsel's services *qua* lead and former liaison counsel only, and not for any services rendered before the various trial courts to which the remaining tag-alongs will be remanded, even if Charles Thompson or David Purcell serves as trial counsel for one or more tag-along plaintiffs. This Court would not, therefore, impose on any of the transferor courts the burden of considering and deciding appropriate fee awards for services which were not rendered before them and which may have been rendered by counsel who are no longer involved in a particular case after remand.

■ 6. *Relation of Court–Set Contingency Fees to Lead and Former Liaison Counsel's Fee Agreements with Their Own Clients.* Lead counsel, who represents several tag-along plaintiffs as local or trial counsel in addition to acting as lead counsel, asks the Court to clarify that the 30% contingency set in the May 7 order does not supplant any pre-existing fee arrangement between himself and his clients in those cases. As indicated in the discussion of issue # 5 above, the contingency fees set by the Court are intended to compensate lead and former liaison counsel for their work in those particular court-appointed roles, and that compensation is entirely separate from and additional to any compensation owed Charles Thompson and David Purcell by clients who have hired them as local or trial counsel in any tag-along actions. Contrary to Chrysler's suggestion, the Court has not made any determination that anything more than a 30% contingency fee for work as local or trial counsel in a tag-along case would be excessive. The Court would agree with lead counsel's understanding that any personally negotiated contingency fee arrangements he has made as local or trial counsel

to tag-along plaintiffs is "exclusive and non-duplicative of the Court's ... 30% contingency award."

■ 7. *The Warner Plaintiffs' Objections to the May 7 Order.* Plaintiffs Randy and Karen Warner in Cause No. 89–0158C(1) object that the Court has impaired their "right to contract for legal services ... by interfering with their contract for legal representation and apportioning their recovery to persons with whom they did not contract for legal services." The Court rejects this argument summarily, in light of the numerous decisions of superior federal courts upholding the Court's authority in cases such as this to appoint lead and liaison counsel and order that they be compensated fairly and appropriately. *See, e.g., In re Air Crash Disaster at Florida Everglades,* 549 F.2d 1006 (5th Cir.1977). The Court is particularly confident in the fairness of holding the Warners responsible for a portion of lead and former liaison counsel's fees in light of the Warners' explicit recognition of the efficacy of lead counsel in these tag-alongs: "Lead counsel, in particular, has done an outstanding job in discovering evidence against Chrysler." The Warners do not, then, appear to deny that they have benefitted from the services of lead and former liaison counsel.

Some language in the Warners' memorandum indicates a possible misunderstanding of the responsibility for lead and former liaison counsel's fees if the Warners are successful in their suit and found to be entitled to a reasonable attorney's fee under 15 U.S.C. § 1989 and/or O.C.G.A. § 10-1–399. In that event, the defendant who is found liable for the Warners' attorney's fees will pay lead and former liaison counsel's compensation as prescribed in the May 7 order, in amounts equal to 30% and 10%, respectively, of the amount by which the total damages award exceeds $500, *in addition to paying the Warners the judgment entered in their favor.* In these circumstances, then, the Warners would not pay lead and former liaison counsel out of their recovery; the damages they are awarded would not be reduced by the contingency fees set by this Court.

The Warners also object that "[c]ontingency fees have been apportioned to liaison and lead counsel with none set aside for Plaintiffs' counsel, Eugene C. Brooks, in this action." The Court's earlier amplification of the effect of the May 7 order should likewise dispel the confusion that has prompted this objection. The fees set by the Court for compensation of lead and former liaison counsel do not affect the arrangements between tag-along plaintiffs and the local or trial counsel they have independently retained. The May 7 order does not alter whatever fee arrangement has been struck by the Warners and their attorney Brooks; having been privately retained by the Warners, Brooks does not need court-ordered compensation as do lead and former liaison counsel, whose services in those roles have been rendered pursuant to court appointment rather than private agreement. The Court trusts this further explanation of the May 7 order will allay some of the Warners' misgivings. For the foregoing reasons, their objections to A(902) are overruled.

8. *The Monier Plaintiffs' Objections to the May 7 Order.* Plaintiffs Paul and Jane Monier in Cause No. 89–1586C(1) express their general opposition to lead counsel's being awarded his costs. In rejecting any argument that lead counsel is not entitled to have his expenses reimbursed, the Court simply refers to its discussion in the May 7 order of the necessity of pro rata assessment of lead and former liaison counsel's costs.

Alternatively, the Moniers object to being assessed any portion of costs incurred after the date on which their case was settled. The Court again refers to its May 7 order and memorandum, where on page 6 the Court specifically indicated that the accounting procedure it will employ in assessing shares of expenses will insure that plaintiffs "pay their share of only those expenses incurred through the pendency of their case in this Court." Accordingly, the Moniers opposition to lead counsel's request for expenses and costs is overruled.

9. *Application of the May 7 Order to Duckett.* Chrysler asks the Court to clarify that A(902) was intended to resolve the attorney's fees issues in the *Duckett* case, Cause No. 88–0388C(1), including those raised by lead counsel's motion to file an amended petition for attorney's fees. The Court believes the motion of lead counsel to which Chrysler refers is A(693), which was listed in A(902) among the motions that memorandum and order was intended to resolve; in any event, the parties should consider *Duckett* to be fully within the intended operation of A(902).

## II. Calculation and Apportionment of Lead and Former Liaison Counsel's Expenses

The Court has reviewed lead and former liaison counsel's latest submissions of their itemized expenses [2] and calculated the per-plaintiff [3] share owed by or on behalf of each of the 48 tag-along plaintiffs whose cases have settled since April 5, 1989 or are still pending. As indicated in the May 7 order and in the discussion above, the Court has spent considerable time calculating each plaintiff's share pro rata so that, with several exceptions to be discussed further below, no plaintiff shoulders any burden of costs incurred after the date on which his case was closed. Where the terms of settlement require Chrysler to pay a particular plaintiff's attorney's fees and costs, Chrysler must bear the expenses apportioned by the Court to that plaintiff: accordingly, the Court has spoken of the share owed "by *or on behalf of*" each plaintiff. Where a settlement does not shift the burden of costs to any defendant or in cases which remain pending, the plain-

---

**2.** David Purcell's expenses as former liaison counsel are itemized in A(909), Charles Thompson's expenses as lead counsel in A(910), and Charles Thompson's expenses as liaison counsel in monthly reports A(343, 389, 431, 455, 476, 523, 574, 600, 618, 633, 650, 745, 825, 845, 865, 888, 903, and 920).

**3.** As indicated in A(902), a husband-and-wife couple who are co-plaintiffs bringing claims concerning a single vehicle are to be considered a single plaintiff for purposes of calculating counsel's fees and expenses. In this context, then, the Court uses the singular "plaintiff" with this understanding.

tiffs themselves are responsible for paying the share apportioned to them by the Court.[4]

■ As a rule, for cases that have settled the Court has used the date on which an order of judgment was entered as the date past which no further responsibility for court-appointed counsel's expenses accrues. Several exceptions to this rule were warranted by particular circumstances, however. In the *Threadgill* case, Cause No. 89–0706C(1), a notice of settlement was filed on May 30, 1990, but lead and former liaison counsel objected to the settlement, which led to a motion by Chrysler to enforce the settlement, which motion was ultimately granted. The delay in the closing of the case was in no way attributable to the Threadgill plaintiffs, who never disputed that they had settled the case as indicated by the May 1990 notice. The Court therefore uses May 30, 1990 as the date past which no additional increment of expenses should be apportioned to the *Threadgill* case.

■ Similarly, in the *Hume* case, Cause No. 89–1588C(1), a stipulation of dismissal reflecting settlement of the case was filed on December 14, 1989; the stipulation was not "so ordered" and made effective until much later, through no fault of the plaintiff. The Court therefore uses December 14, 1989 as the date past which no additional increment of expenses should be apportioned to the *Hume* case. These two cases are to be distinguished from the *Chrzanowski* case, Cause No. 89–0261C(1), in which a motion to compel settlement, ultimately granted, was necessitated by the reticence of the plaintiff herself to consummate a settlement the Court ultimately found to be binding on her. In that case, the Court makes no exception to the general rule, and uses as the cut-off the date on

which the Court issued the order granting the motion to compel settlement and closing the case; until forced to do so at that time, plaintiff had not removed herself from the ranks of active tag-along plaintiffs and her case must therefore be responsible for its proportionate share of appointed counsel's expenses through that date.[5]

Only Chrysler has submitted objections to the costs enumerated by lead and former liaison counsel in A(909) and A(910). No objections have ever been filed to the monthly statements of expenses filed by Charles Thompson in his capacity as liaison counsel.[6] The Court has carefully considered Chrysler's specific objections to various claimed costs. Though the Court will not discuss each of them here, it will be obvious from the discussion which of those objections the Court has deemed meritorious. Initially, the Court notes that it does not consider the reimbursement of lead and former liaison counsel's expenses in this matter entirely analogous to the taxing of costs against a losing party under Fed.R.Civ.P. 54(d) and 28 U.S.C. § 1920. The Court's broader purpose here is to insure that lead and liaison counsel are fairly reimbursed for actual expenses appropriately incurred in the performance of their court-appointed duties, and in so doing the Court does not consider itself limited by the stricter confines of Rule 54 and § 1920.

■ Both lead and former liaison counsel have claimed certain expenses pre-dating their appointment by the Court to those roles on March 1, 1989 [A(24)]; the Court will not tax such expenses, which cannot be said to have been necessarily incurred in the course of counsel's court-appointed duties. Former liaison counsel has included some expenses incurred after his dismissal from that role on November 28, 1989

---

**4.** The Court is not aware of which party is responsible for costs under each settlement, and leaves it to the parties to act in accordance with their agreements; any reference to a particular plaintiff's share is not necessarily intended by the Court to imply that the plaintiff is responsible for payment, if there exists a settlement agreement to the contrary.

**5.** Furthermore, the Court notes that for some time after the date on which the case was ultimately found to have been settled, Charles Thompson acted as plaintiff's own counsel and in fact filed on plaintiff's behalf, among other things, a motion to set aside the contested settlement.

**6.** A(343, 389, 431, 455, 476, 523, 574, 600, 618, 633, 650, 745, 825, 845, 865, 888, 903, and 920).

[A(297)], on the ground that they were incurred in assisting lead counsel; the Court has not disallowed those expenses per se, but considered them individually for reasonableness in light of lead counsel's authority under A(24) to delegate appropriate tasks to other counsel.

One recurring item of cost as to which the Court does not allow the full measure of expense claimed by either lead or former liaison counsel is photocopying. Lead counsel has claimed 20 cents per page for photocopies; former liaison counsel has claimed 15 cents per page. The Court deems these figures to be excessive and to more than merely reimburse lead and former liaison counsel for the actual cost of photocopying. The Court has therefore across the board reduced photocopying charges to the rate of 5 cents per page. This reduction was not made in amounts claimed for photocopying in libraries, commercial copy centers, etc., which the Court believes were claimed at the actual cost charged to counsel.

Chrysler has made an issue of lead and former liaison counsel's claims for certain office supplies said to have been purchased specifically for use in MDL 740A. In view of the Court's reimbursement purpose, the highly logistical nature of the liaison counsel role particularly, and the de minimis nature of the total cost of such items (approximately $1 per plaintiff share for lead counsel and less than $10 per plaintiff share for former liaison counsel), the Court overrules Chrysler's objection and awards counsel these expenses.

The Court will not impose on the plaintiffs the $200 spent by lead counsel to mail 700 *Shapero* letters to class action opt-outs as potential clients. Nor does the Court tax to plaintiffs the more than $5000 claimed by lead counsel in connection with defending depositions of *Adler/Gronek* plaintiffs in Washington, D.C. on May 30, 1990 (including $538 in air fare for plaintiff Boggie!). Plaintiffs' depositions are not useful to other plaintiffs the way defendants' or certain other witnesses' depositions are. Furthermore, lead counsel represented the *Adler/Gronek* plaintiffs as

their personal counsel; these considerable expenses are chargeable in that context rather than in the context of Charles Thompson's lead counsel role.

The Court agrees with Chrysler that lead counsel's reliance on overnight courier services for timely filings with the Court became excessive; the Court therefore taxes such costs at only one-third the amount claimed, reducing the $2,639.50 total to $879.83. Because former liaison counsel does not appear to have relied so excessively on express delivery services (his claims for such services are much less, considered proportionately for the time period involved), the Court accepts his claims for these couriers as is.

Lead counsel has tacked to the end of A(910) estimated expenses attributable to the depositions of Leroy Richie and certain experts, scheduled a week after A(910) was filed. The Court declines to tax the anticipated expenses at this time; instead, the actual rather than estimated expenses should be included in lead counsel's final statement of expenses, when called for by the Court. This statement will include expenses incurred as lead counsel after April 1991 and expenses incurred as liaison counsel after May 1991. See the discussion of future expenses in Part I above.

The Court does not allow the taxation of the $240 in filing fees for the *Adler* and *Gronek* cases, as claimed by former liaison counsel. Such an expense is not properly shared by plaintiffs in other tag-along cases. Lastly, with respect to former liaison counsel's restatement of expenditures, the Court notes that he claims expenses associated with a July 1990 trip to St. Joseph, Missouri, some eight months after his discharge as liaison counsel, for copying the file in *Maugh v. Chrysler* and meeting with plaintiff's counsel in that case. Mr. Purcell claims the expenses on the ground that discovery in the *Maugh* case was helpful in the tag-along cases. To that end, the Court orders that the *Maugh* file be made a part of the tag-along document depository at no further cost to the tag-along plaintiffs, if it has not already been done. Nonetheless, the Court

believes the trip and its fruits benefitted Purcell's preparation for the *Carpenter*[7] trial as much if not more than it did the tag-along plaintiffs, and therefore taxes only half of the trip's expenses to be shared among the tag-along plaintiffs.

As the Court indicated in the May 7 order and as the above discussion confirms, the Court has scrutinized lead and former liaison counsel's expenses carefully to reduce excessive costs and eliminate expenses not properly taxed against all the tag-along plaintiffs. In the May 7 order, the Court noted that appointed counsel's claimed expenses yielded an average of $1000 per plaintiff. After the Court's pruning, the average is reduced to slightly less than $800 per plaintiff. This figure is not necessarily representative of the actual pro rata shares, given the more complex method of accounting used to take into account the termination date of cases which have settled; in fact, the total expenses owed on behalf of a single plaintiff range from a low of $218.37 to a high of $966.81.

The results of the Court's accounting are summarized in the attached Exhibit A. The first column shows the sums owed on behalf of each plaintiff to Charles Thompson in his two roles as lead counsel and as liaison counsel and the sum of those two amounts. The second column shows the sum owed on behalf of each plaintiff to David Purcell for expenses incurred as former liaison counsel. For each affected tag-along plaintiff, the party responsible for counsel's expenses is ordered to remit to lead and liaison counsel, within ten days of the date of liaison counsel's service of this order, the amount the Court has calculated is owed on behalf of each plaintiff.

In its May 7 order, the Court ordered lead and former liaison counsel to advise the Court which of the tag-along plaintiffs have previously made any payments to defray appointed counsel's expenses. Former liaison counsel has informed the Court of payments by five plaintiffs, which mo-

nies were used entirely by former liaison counsel. Because none of the five plaintiffs owes former liaison counsel as much as the amounts previously paid and used by him, the Court directs former liaison counsel to pay the difference to lead counsel to be credited against the amount owed him on behalf of each of those plaintiffs. The amounts of the previous payments and resulting set-off against lead counsel's expenses are also shown in Exhibit A, in the third and fourth columns, respectively. For these plaintiffs, Exhibit A shows the amount owed to former liaison counsel as paid, and includes in the first column a balance due lead counsel reflecting the set-off amount to be paid from Mr. Purcell to Mr. Thompson.

In the status reports to be filed with the Court within twenty days of liaison counsel's service of this order on all affected plaintiffs (see p. 668 *supra*), lead and former liaison counsel shall also indicate in which cases they have received payment of expenses as ordered, and, where expenses have not been paid as ordered, indicate who owes them and in what amount. Any party failing to pay expenses as ordered will then be subject to sanctions.

Accordingly,

IT IS HEREBY ORDERED that liaison counsel shall forthwith serve a copy of this memorandum and order on all plaintiffs listed in Exhibit A hereto, and file with the Court a certificate of service indicating the date of service and to whom the order was mailed.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this memorandum and order on former liaison counsel.

IT IS FURTHER ORDERED that this Court's memorandum and order dated May 7, 1991 [A(902)] be and is clarified and explained per the memorandum filed herewith.

IT IS FURTHER ORDERED that the parties to the settlements in *Hume v. Chrysler Motors Corp.*, 89–1588C(1) and

---

7. *Kendra Carpenter, et al. v. Chrysler Motors Corp., et al.*, Cause No. 88–2292C(1), was remanded to the Circuit Court of the City of St. Louis on June 29, 1989. David Purcell represented the plaintiffs and tried the case in early 1991 in state court to a verdict including more than $1 million dollars in punitive damages.

*Monier v. Chrysler Credit Corp., et al.,* 89–1586C(1) shall jointly prepare and file with the Court, within ten (10) days of the date of this order, an appropriate protective order governing the disclosure of the settlement amounts to lead and former liaison counsel.

IT IS FURTHER ORDERED that within five (5) days of the Court's issuance of the protective order, (1) the parties to the *Hume* and *Monier* settlements shall jointly prepare, file with the Court under seal, and serve on lead and former liaison counsel only, appropriate sworn statements as to the amount of settlement in each case, each statement to be signed by all parties to the settlement in question, and (2) the *Hume* and *Monier* plaintiffs shall pay to lead and liaison counsel fees in the amount prescribed by the Court's May 7, 1991 order [A(902)] and file with the Court a notice that the fees have been paid in accordance with this order.

IT IS FURTHER ORDERED that, in all tag-along cases that have settled since the April 5, 1989 deadline, other than the *Hume* and *Monier* cases, fees in the amount prescribed by the Court's May 7, 1991 order [A(902)] shall be paid to lead and former liaison counsel, by the party responsible for the payment of counsel fees under the terms of the settlement agreement, within ten (10) days of the date of liaison counsel's service of this order.

IT IS FURTHER ORDERED that the parties to each pending tag-along action shall notify lead and former liaison counsel within three (3) days of the termination of the action, whether by settlement, judgment or otherwise; in the case of settlement, this notice shall include a sworn statement setting forth the settlement amount and signed by all parties to the settlement.

IT IS FURTHER ORDERED that, in all tag-along cases yet pending, fees in the amount prescribed by the May 7, 1991 order [A(902)] shall be paid to lead and former liaison counsel, by the party responsible for the payment of counsel fees under the terms of the settlement or of the judgment, within twenty-one (21) days of dismissal due to settlement or the entry of final judgment.

IT IS FURTHER ORDERED that after remand Charles Thompson may charge for copying and mailing of items requested by other tag-along action parties, at rates not to exceed 5 cents per page for photocopying and actual cost for duplication of videotapes, plus actual cost of mailing.

IT IS FURTHER ORDERED in Cause No. 89–0158C(1) that the Warner plaintiffs' objections [A(918)] to the memorandum and order of May 7, 1991 be and are overruled.

IT IS FURTHER ORDERED in Cause No. 89–1586C(1) that the Monier plaintiffs' opposition [A(922)] to lead counsel's request for expenses and costs be and is overruled.

IT IS FURTHER ORDERED that the file relating to *Maugh v. Chrysler,* as copied by former liaison counsel in St. Joseph, Missouri in July 1990, shall be made a part of the tag-along document depository at no further cost to the tag-along plaintiffs.

IT IS FURTHER ORDERED that, for each affected tag-along plaintiff, the party responsible for payment of counsel's expenses shall remit to lead and liaison counsel, within ten (10) days of the date of liaison counsel's service of this order, the applicable sum shown in Exhibit A hereto.

IT IS FURTHER ORDERED that former liaison counsel shall, within ten (10) days of the date of this order, pay to lead counsel the set-off amounts shown in Exhibit A hereto, which shall be credited toward the amounts owed to lead counsel on behalf of the five plaintiffs who have previously made payments to defray appointed counsel's expenses.

IT IS FURTHER ORDERED that within twenty (20) days of the date of liaison counsel's service of this order, lead and former liaison counsel shall file status reports indicating in which cases they have received payment of fees and expenses as ordered herein, and, where fees and expenses have not been paid as ordered, who owes them and in what amount. Any party failing to pay fees and expenses as ordered will be subject to sanctions for violation of this Court's orders.

EXHIBIT A

## LEAD AND LIAISON COUNSEL EXPENSES
## PER PLAINTIFF SHARE

| | Total Amount Owed Thompson As Lead Plus Liaison Counsel | Amount Owed Purcell As Liaison Counsel | Amount Previously Paid | Amount of Set-Off of Lead Counsel's Expenses |
|---|---|---|---|---|
| Monier | 125.41 + 0 = 125.41 | 93.86 | 0 | 0 |
| Hume | 226.09 + 2.91 = 229.00 | 98.89 | 0 | 0 |
| Threadgill | 455.97 + 67.11 = 523.08 | 98.92 | 0 | 0 |
| Adler | 529.80 + 78.86 = 608.66 | 109.10 | 0 | 0 |
| Axelrod | 529.80 + 78.86 = 608.66 | 109.10 | 0 | 0 |
| Bernd | 529.80 + 78.86 = 608.66 | 109.10 | 0 | 0 |
| Bidniuk | 529.80 + 78.86 = 608.66 | 109.10 | 0 | 0 |
| Boggie | 529.80 + 78.86 = 608.66 | 109.10 | 0 | 0 |
| Brown | 529.80 + 78.86 = 608.66 | 109.10 | 0 | 0 |
| Dworkin | 529.80 + 78.86 = 608.66 | 109.10 | 0 | 0 |
| Ferguson | 529.80 + 78.86 = 608.66 | 109.10 | 0 | 0 |
| Garner | 529.80 + 78.86 = 608.66 | 109.10 | 0 | 0 |
| Gilbert | 529.80 + 78.86 = 608.66 | 109.10 | 0 | 0 |
| Green | 529.80 + 78.86 = 608.66 | 109.10 | 0 | 0 |
| Hayes | 529.80 + 78.86 = 608.66 | 109.10 | 0 | 0 |
| Jones | 529.80 + 78.86 = 608.66 | 109.10 | 0 | 0 |
| Lafazia | 529.80 + 78.86 = 608.66 | 109.10 | 0 | 0 |
| Lindsey | 529.80 + 78.86 = 608.66 | 109.10 | 0 | 0 |
| Messier | 529.80 + 78.86 = 608.66 | 109.10 | 0 | 0 |
| Okray | 529.80 + 78.86 = 608.66 | 109.10 | 0 | 0 |
| Owen | 529.80 + 78.86 = 608.66 | 109.10 | 0 | 0 |
| Shubnell | 529.80 + 78.86 = 608.66 | 109.10 | 0 | 0 |
| Shrader | 529.80 + 78.86 = 608.66 | 109.10 | 0 | 0 |
| Stevens | 529.80 + 78.86 = 608.66 | 109.10 | 0 | 0 |
| Thompson | 529.80 + 78.86 = 608.66 | 109.10 | 0 | 0 |
| Walker | 529.80 + 78.86 = 608.66 | 109.10 | 0 | 0 |
| Gronek | 529.80 + 78.86 = 608.66 | 109.10 | 0 | 0 |
| Horton | 532.78 + 102.03 = 634.81 | 109.19 | 0 | 0 |
| Duckett | 532.78 + 103.03 = 634.81 | 109.19 | 0 | 0 |
| Johnson | 533.36 + 112.75 = 646.11 | 109.19 | 0 | 0 |
| Chrzanowski | 556.20 + 286.60 = 842.80 | 109.19 [1] | 0 | 0 |
| Shout | 556.20 + 301.42 = 857.62 [Balance Due = 466.81] | ~~109.19~~ Paid | 500.00 | 390.81 |
| Hicks | 556.20 + 301.42 = 857.62 | 109.19 | 0 | 0 |
| Walitalo | 556.20 + 301.42 = 857.62 | 109.19 | 0 | 0 |
| Lytle | 556.20 + 301.42 = 857.62 | 109.19 | 0 | 0 |
| Ketzler | 556.20 + 301.42 = 857.62 [Balance Due = 616.81] | ~~109.19~~ Paid | 350.00 | 240.81 |
| Steward | 556.20 + 301.42 = 857.62 | 109.19 | 0 | 0 |
| Carter | 556.20 + 301.42 = 857.62 [Balance Due = 466.81] | ~~109.19~~ Paid | 500.00 | 390.81 |
| England | 556.20 + 301.42 = 857.62 | 109.19 | 0 | 0 |
| Mangus | 556.20 + 301.42 = 857.62 | 109.19 | 0 | 0 |
| Warner | 556.20 + 301.42 = 857.62 [Balance Due = 466.81] | ~~109.19~~ Paid | 500.00 | 390.81 |
| Boucher | 556.20 + 301.42 = 857.62 | 109.19 | 0 | 0 |
| Smith | 556.20 + 301.42 = 857.62 [Balance Due = 466.81] | ~~109.19~~ Paid | 500.00 | 390.81 |
| Moore | 556.20 + 301.42 = 857.62 | 109.19 | 0 | 0 |
| Wilson | 556.20 + 301.42 = 857.62 | 109.19 | 0 | 0 |
| Deatherage | 556.20 + 301.42 = 857.62 | 109.19 | 0 | 0 |
| Loffredo | 556.20 + 301.42 = 857.62 | 109.19 | 0 | 0 |
| Parnes | 556.20 + 301.42 = 857.62 | 109.19 | 0 | 0 |

1. Because the <u>Chrzanowski</u> case closed on May 13, 1991 and only those of Charles Thompson's expenses as lead counsel incurred through April, 1991 are included in this accounting, an additional increment of expenses incurred through May 13, may be owed on behalf of Chrzanowski.